IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

January 28, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

MARIA CHRISTIANE DOHMEN-GOFORTH,)   LOUDON COUNTY GENERAL
                                  )   SESSIONS COURT
                                  )   C.A. NO. 03A01-9807-GS-00237
            Plaintiff/Appellee    )
                                  )
vs.                               )
                                  )   HON. JOHN O. GIBSON
                                  )   JUDGE
                                  )
LLOYD DAVID GOFORTH,              )
                                  )
            Defendant/Appellant   )   MODIFIED IN PART AND
                                  )   REMANDED


JEAN MUNROE, Knoxville, for Appellant.


MARTY MCDONALD and JAY W. MADER, MCDONALD, LEVY & TAYLOR, Knox-
ville, for Appellee.



O P I N I O N


McMurray, J.


        This appeal arises from a judgment in a divorce action which
was entered in the General Sessions Court in Loudon County.  Ms.
Maria  Christiane  Dohmen-Goforth  ("Wife")  filed  a  complaint  for
divorce on May 8, 1997, and on August 11, 1997, the husband filed
a counter-complaint.  After a hearing on January 8, 1998, the trial
court  awarded  a  divorce  to  both  parties  on  the  ground  of
inappropriate marital conduct.  There are no children from the

marriage and no alimony was awarded.  Although the husband presents seven issues for our consideration, we have taken the liberty of consolidating them into four:

1.  Whether the trial court's ruling, prior to hearing any proof, that all property--including income on separate property which accrued during the marriage--was marital property, was arbitrary and capricious.

2.  Whether the trial court erred in failing to make a determination as to what was marital and separate property.

3.  Whether the trial court abused its discretion in determining the division of assets.

4.  Whether the trial court erred by failing to address the federal income tax issue and the division of marital photographs and receipts.

After a review of the record, we modify the judgment of the trial court and remand this case for any further action that may be necessary consistent with this opinion.

The husband and the wife, a German citizen, met while both were students at Arizona State University.  They were married on December 7, 1990 in Maricopa, Arizona, and after a brief move to Texas, the couple moved to Tennessee for The husband's employment at the Watts Bar nuclear plant.

The husband, who holds a bachelor of science degree in engineering, earned during the first five years of the marriage an average of $72,946 per year, working sometimes as much as 80 hours

2

a week.  However, after being laid off from the Watts Bar nuclear plant in September 1995, the husband decided to pursue an associate degree in computer science, which he had completed at the time of the divorce hearing.  The federal government paid for his educational expenses as part of a retraining program for employees who were being phased out of the nuclear power industry.  At the time of the divorce hearing, he was essentially unemployed, except for some part-time work at his church.  He returned his earnings from this position to the church as a tithe.  He was taking an additional course in computer science in the hope that it would help him in his job search.

The husband testified that he participated in household tasks and performed yard work during the marriage.  He also testified that the wife did not contribute much monetarily to the marriage nor did she participate very much in household tasks.  Both testified that the wife made no contributions to the management of The husband's investment accounts.

The university which the wife attended in Germany sponsored her work at Arizona State University. After moving to Texas, she attended the University of Oklahoma in 1991, and after moving to Tennessee, she earned her degree from the University of Oklahoma by correspondence, with occasional trips to Oklahoma.  In 1994, she received a master's degree in liberal studies with an emphasis in social sciences.  This degree qualified her to teach.  In addition,

she received certification as an emergency medical technician (EMT). The husband paid Wife's educational expenses for the master's degree and for the EMT certificate. During the marriage, the wife performed volunteer work and received small stipends, with her total earnings from 1992 through 1995 estimated at approximately $9,014.56. However, in 1996 she earned $14,032.12.

Both the husband and Wife had separate assets before the marriage. The husband had an individual retirement account consisting of two portions which were both bought through Paine Webber in 1986. The first portion was an annuity he had purchased on February 11, 1986 for $7,437.15, and when this annuity was rolled into the Reinhardt-Werba account on February 25, 1994, it was worth $15,786.99. The second portion was an investment account which resided with Paine Webber that had a balance of $8,018.17 on February 28, 1986. According to the husband, the Paine Webber statement does not track this annuity because at the time it was bought, it was held separately by Integrated Resources Life and Paine Webber was only the purchasing agent. The husband subsequently rolled both portions into the Reinhardt Werba account. He further asserted that he made a deposit into the Paine Webber account that had a balance of $8,217.000 in December 1990, the month the parties were married. He could not produce any records on these accounts from February 25, 1994 through the date of the divorce hearing. However, he stated in an affidavit that only $5,000 was invested in this account during the marriage. At the

4

time of the divorce hearing, the Reinhardt Werba account had a balance of $53,844.22. The husband also owned a 1981 Toyota Corolla before the marriage.

The wife had an investment account in Germany before the marriage, which is identified as the Depotauszug account. On December 31, 1990, the month the parties were married, this account was worth 35,340 marks. The wife offered an exhibit that indicated that on December 31, 1996, her investment account was worth 52,613.20 marks, which is approximately $30,000 in United States currency. She testified that the account increased from 1990 to 1997 because of a repayment of a 15,000-mark loan she had made to her father in 1982 for the purchase of a house. However, she did not provide any documentary proof of the repayment of such a loan. She testified in her affidavit that this account had actually increased only $1,200 from December 1990 until January 1998. Furthermore, she admitted that she had withdrawn money from the account during the marriage for her expenses when she traveled to Germany to visit her family.

In May 1995 the parties bought a house in Loudon County for $76,000. Although they could not agree on the current value of the house, they did stipulate that the remaining debt on the mortgage was $54,755.00. They also acquired various items of personal property during the marriage.

In its written memorandum, the trial court awarded to the wife a 50% interest in the following investment accounts, after all taxes have been paid for these accounts: Fidelity Destiny, ITT Hartford, FSC Securities Corporation, Raytheon, FSC Securities Corporation, and Keogler Morgan. In addition, the trial court awarded to her a 42.45% interest in The husband's Reinhardt Werba investment account and noted that she is responsible for paying any income taxes on this share of the account. The court also awarded to her all of her Depotauszug investment account, except for $600 which was to be paid to the husband as one-half of the increase in the account during the marriage according to the wife's testimony. The court awarded the wife 9.33% of any income the husband receives from his Navy retirement, with she being responsible for taxes on her percentage. Regarding the parties' marital residence, the court ordered the parties to auction the house between themselves, with the husband being responsible for the house during his possession of it. With respect to personal property, each party had provided the court with a list of requested items. However, on the husband's list of items, the court marked through the VCR, bread machine, microwave, Samyo vacuum cleaner, and television and placed a check next to these items on the wife's list of items, although she had not asked for these items. Finally, during the pendency of the divorce, the trial court in an agreed order permitted each party to withdraw $10,000, which was withdrawn from the ITT Hartford account, and each to withdraw $5,000, which was withdrawn from one of the FSC accounts. The court does not address the

6

$15,000 withdrawal by each party in its memorandum. The trial court also stated that "[a]ll other securities and interests not given to the wife is [sic] awarded to the husband, with him to make payment of his income tax liability on the amount he receives."

The following table, which was provided in part in the wife's brief, summarizes the trial court's written memorandum:

### SEPARATE PROPERTY

|  | Husband | Wife |
|---|---|---|
| Rheinhardt IRA: | $8,130.46 |  |
| Depotauszug: |  | $28,400.00 |

### MARITAL PROPERTY

|  | Husband | Wife |
|---|---|---|
| Rheinhardt IRA: | $22,856.88 | $22,856.88 |
| Depotauszug: | 600.00 | 600.00 |
| Fidelity: | 1,000.00 | 1,000.00 |
| ITT Hartford: | 15,327.50 | 15,327.50 |
| FSC: | 14,671.98 | 14,671.98 |
| Raytheon: | 19,985.24 | 19,985.24 |
| Morgan Keogler: | 2,400.00 | 2,400.00 |
| FSC: | 1,000.00 | 1,000.00 |
|  | _____ | _____ |

7

|  |  |  |
|---|---|---|
| | $77,841.60 | $77,841.60 |
| Navy Pension | 90.67% | 9.33% |
| Withdrawal of funds pending divorce | $15,000.00 | $15,000.00 |
| | All other securities and interests not awarded to wife | |

In his first issue, the husband contends that the trial court's comments before the divorce hearing that income on separate property was marital property were prejudicial. As the wife notes in her brief, the trial court's comments did not result in an actual ruling on the parties' property. The court acknowledged that it would make a determination based upon the proof provided by the parties. Accordingly, we conclude that the trial court's comments were not prejudicial. This issue is without merit.

The husband's remaining three issues concern the trial court's failure to make a determination regarding the separate property of each party and the marital property of the parties, thereby erring in the division of the parties' assets. Before the marriage, the husband owned a two-part investment account with Paine Webber that was later rolled into another account, which is identified as the Reinhardt Werba account. Also, during the marriage, the husband opened several other investment accounts. He asserts that the trial court failed to consider the relevant factors under Tennessee

8

Code Annotated § 36-4-121(c)(1996) in making its division of marital property.  In addition, he maintains that the trial court failed to address the division between the parties of the 1995 tax debt, the marital photographs, and the household receipts.

The husband contends that the wife received more than an equitable share of the marital estate in light of the relevant factors to be considered under Tennessee Code Annotated § 36-4-121(c).  First, he asserts that the marriage was of relative short duration, approximately six and one-half years, and that in marriages of short duration, it is appropriate to divide the property in a way that places the parties in the same position they would have been in had they never married, citing Batson v. Batson,769 S.W.2d 849, 859 (Tenn. App. 1988).  He also argues that under Batson, "each spouse's contributions to the accumulation of assets during the marriage is an important factor," and "[w]hen a marriage is short, the significance and value of a spouse's non-monetary contributions is diminished, and claims by one spouse to another spouse's separate property are minimal at best." Id. (citations omitted).  The husband contends "that the duty is on the non-owner spouse to prove the amount of appreciation during the marriage in order for the non-owner spouse to be entitled to a marital portion." He cites Cutsinger v. Cutsinger, 917 S.W.2d 238, 241 (Tenn. App. 1995) in support for his argument.  In that case, this Court observed that "[i]f the nonowner spouse cannot prove that a piece of property is marital property, the trial court has

9

no authority to make an equitable division of the property." Id. However, "if a nonowner spouse can show that he contributed to the preservation and appreciation of a piece of separate property, the trial court may grant the nonowner spouse an equitable share of the increase in value of that property." Id.

The husband argues that the wife did not make "a significant contribution towards the acquisition and preservation of marital assets and/or separate assets." He contends that Tennessee Code Annotated § 36-4-121(b)(1)(C) states that a spouse may make a significant contribution during a marriage as a housewife, parent, wage earner, or financial manager for the family which would justify an equitable division of the appreciation of separate property. He maintains that wife never fulfilled any of these roles. He asserts that she primarily did volunteer work and was not a financial contributor to the marriage nor did she participate in the management of any investments during the marriage. Furthermore, the husband asserts that the wife made little monetary contribution to the household during the marriage, despite her level of education and despite the fact that she did not have any health problems to impede her ability to work. He further asserts that she did not perform her share of the household tasks nor did she contribute in any way to the advancement of his career.

The husband further argues that the wife benefited from the marriage by obtaining a master's degree and an EMT certificate, as

10

well as acquiring a green card as the spouse of a United States citizen. The husband paid for the wife's educational expenses for obtaining the master's degree and the EMT certificate. He argues that the record indicates that at the end of the marriage, she was better educated than he was because she had a master's degree and he had a bachelor's degree. In addition, his employment possibilities in his previous career of nuclear engineering were almost nonexistent. Also, in his new career of computer science, he would be starting on the ground floor, whereas the wife's employability as an educator with a master's degree would be excellent, especially since she is bilingual. Consequently, based on the foregoing, the husband contends that he should have received a greater portion of the marital assets in addition to all of his separate asset, the Reinhardt Werba account.

With respect to the Reinhardt Werba account, the husband argues that only $5,000 was invested in that account during the marriage. However, the trial court awarded to the wife one-half the value of the account, approximately $23,000, after an additional $8,130.00 award to the husband as separate property. However, the husband notes that the trial court awarded to him only $600 from Wife's Depotauszug account, which had increased from 35,340 marks to 52,613.20 marks during the marriage. The wife testified that the account had increased in value only $1,200 during the marriage.

The husband also maintains that the trial court's written memorandum failed to address a division of the tax debt for tax year 1995, as well as a division of the marital photographs and household receipts.

The wife argues that the trial court properly classified the separate and marital property of the parties and equitably divided the marital estate between the parties. First, she contends that although the trial court did not expressly classify the parties' separate and marital property in its opinion, such a classification is easily determined from the division of the property, which was done according to Tennessee Code Annotated § 36-4-121.

With respect to The husband's Reinhardt Werba account, the wife argues that the account had a stipulated value of $53,844.22 at the time of the divorce hearing. She asserts that the trial court's award of 57.55% to The husband and 42.45% to Wife evidences an intent by the trial court to award husband approximately $8,130.46 as separate property. She argues that this amount is roughly equivalent to the $8,217.21 of "identifiable separate property" in the Paine Webber IRA on December 31, 1990. she further argues that "the other funds alleged to be separate in the Rheinhardt [sic] Werba IRA are not capable of segregation and were commingled with marital property." She also argues that "[t]he increase in value of the $8,130.46 in separate IRA monies [from The husband's Reinhardt Werba account] further became marital property

12

as a result of [her] substantial contribution to its preservation and value. [She] substantially contributed to the increase and preservation of these monies through her household skills and volunteer work." While the wife acknowledges that her financial contributions to the marriage were less than those of The husband, she contends that her contributions should not be diminished.

Before a marital estate can be divided, the trial court must first determine what is separate property and what is marital property. Batson v. Batson, 769 S.W.2d 849, 856 (Tenn. App. 1988). Tennessee is a "dual property" jurisdiction, which means that a spouse's separate property is distinguished from marital property. Wade v. Wade, 897 S.W.2d 702, 713 (Tenn. App. 1994).

Tennessee Code Annotated § 36-4-121(b)(2) (1996) defines "separate property":

> (A)All real and personal property owned by a spouse before marriage;
>
> (B)Property acquired in exchange for property acquired before the marriage;
>
> (C)Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
>
> (D)Property acquired by a spouse at any time by gift, bequest, devise or descent.

Tennessee Code Annotated § 36-4-121(b)(1)(1996) defines marital property:

(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

When making an equitable division of marital property, the court shall consider all of the following relevant factors:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party

14

as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996).

It is well established that division of a marital estate need not be equal to be equitable. <u>Wade</u>, 897 S.W.2d at 717; <u>Watters v. Watters</u>, 959 S.W.2d 585, 591 (Tenn. App. 1997).

We find that the husband's argument is persuasive regarding the division of the separate and marital assets. With regard to separate assets, the wife's Depotauszug account did increase more than $1,200 during the marriage. She provided no documentation to account for the increase in the account, although she testified that the increase was attributable to a repayment by her father of a 15,000-mark loan she had made to him before the marriage. Furthermore, Wife admitted that she had withdrawn funds from this account to pay her travel expenses to Germany. Likewise, the husband could not produce sufficient documentation regarding the roll over of two accounts at Paine Webber into his Reinhardt Werba

account, but did state that no more than $5,000 was invested in this account during the marriage.

Both parties lacked sufficient proof of the value of the other's separate account immediately before the marriage as well as proof of any deposits to or withdrawals from these accounts. Therefore, the husband is awarded his Reinhardt Werba investment account in its entirety, and the wife is awarded her Depotauszug account in its entirety. The husband is also to receive the 1981 Toyota Corolla, which was his property before the marriage.

With respect to marital property, the record reveals that the marriage lasted approximately six and one-half years, during which time the wife obtained a master's degree in education as well as certification as an EMT. The husband paid for these educational expenses. During the marriage, the wife did volunteer work and received minimal stipends until 1996 when she earned $14,032.12. During most of the marriage, the husband enjoyed a lucrative salary and opened several investment accounts until he lost his position as an engineer in September 1995. He then returned to school through a government retraining program, which paid for his educational expenses, to obtain an associate degree in computer science. However, his earning potential from this new career in computer science was expected to be significantly less than his earnings as an engineer.

16

According to the deposition of Charles Bratton, financial consultant for a couple of the investment accounts, division of certain investment accounts could result in tax penalties or fees. He further testified that the husband started the ITT Hartford account with an initial investment of $20,000. Furthermore, both The husband and Wife testified that the wife did not participate in the management of any of the investment accounts that were opened during the marriage.

Based on all the foregoing, we conclude that the following division of property to be equitable:

SEPARATE PROPERTY

| | Husband | Wife |
|---|---|---|
| Reinhardt Werba: | $53,844.22 | |
| Depotauszug: | | approx.$30,000.00 |
| | 1981 Toyota Corolla | |

MARITAL PROPERTY

| | Husband | Wife |
|---|---|---|
| ITT Hartford: | $20,000.00 | $10,655.00 |
| FSC: | | $29,343.96 |
| Raytheon: | $39,970.48 | |
| Fidelity: | | $ 2,000.00 |
| Morgan Keogler: | | $ 4,800.00 |

17

| | | |
|---|---|---|
| FSC: | | $ 2,000.00 |
| Withdrawal of funds pending divorce | $15,000.00 | $15,000.00 |
| TOTAL | $74,970.48 | $63,798.96 |
| Navy pension | 90.67% | 9.33% |

Furthermore, the marital photographs are to be divided equally between the parties, and the tax debt for the 1995 tax year is to be divided equally between the parties. The household receipts are to be given immediately to the party in possession of the house. If the house is sold at auction to a third party, the husband and Wife are to divide equally any proceeds from the auction, after the payment of all taxes, expenses of sale, sales commission, attorneys' fees, and other expenses, if any, associated with the sale. Although the wife did not ask for the personal property items awarded to her by the trial court (i.e., VCR, bread machine, microwave, Samyo vacuum cleaner, and television), we affirm the trial court's award of these to the wife.

For the aforementioned reasons, we modify the trial court's judgment. This case is remanded for such further action as may be necessary, consistent with this opinion. Costs of appeal are assessed equally between the appellant and the appellee.

_____
Don T. McMurray, Judge

CONCUR:

18

_____
Houston M. Goddard, Presiding Judge


_____
Herschel P. Franks, Judge

IN THE COURT OF APPEALS
AT KNOXVILLE


MARIA CHRISTIANE DOHMEN-GOFORTH,)  LOUDON COUNTY GENERAL
                                    )  SESSIONS COURT
                                    )  C.A. NO. 03A01-9807-GS-00237
      Plaintiff/Appellee    )
                                    )
vs.                              )
                                  )  HON. JOHN O. GIBSON
                                  )  JUDGE
                                  )
LLOYD DAVID GOFORTH,       )
                                  )
      Defendant/Appellant  )  MODIFIED IN PART AND
                                  )  REMANDED


**<u>JUDGMENT</u>**


    This appeal came on to be heard upon the record from the General Sessions Court for Loudon County, briefs and argument of counsel.  Upon consideration thereof, this Court is of opinion that there was some error in the trial court.

    We modify the trial court's judgment relating to division of the parties' assets.  This case is remanded for such further action as may be necessary, consistent with this opinion.  Costs of appeal are assessed equally between the appellant and the appellee.


                             PER CURIAM